UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
    PLAINTIFF,

                HON. GEORGE CARAM STEEH

                CASE #:15-20652

VS.

**KEITHON PORTER**
    DEFENDANT.

_____/

MOTION AND INCORPORATED MEMORANDUM OF LAW FOR
JUDGMENT OF ACQUITTAL PURSUANT TO FRCRP RULE 29(A)

I. INTRODUCTION

    The Defendant asks for acquittal on the RICO and VCAR counts against him because of a fundamental failure of proof which arises from the Government's strained efforts to convert alleged independent violent state crimes into federal offenses. Even though *Boyle v. United States,* 556 US 538 (2009), allows a finding of a racketeering enterprise structure merely from the acts which may comprise a pattern of racketeering activity, evidence of a certain amount of organizational structure is still required. *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F3d 783 (6th Cir. 2012). The Government's evidence does not meet that standard, even when viewed under the deferential rules the court is required to use in considering this motion.

    This failure of proof is further evident in the lack of evidence to connect the numerous alleged state offenses to the Count One racketeering enterprise allegation; and it is evident in the failure of proof to establish the required connection of that racketeering enterprise to interstate commerce.

1

"Recent precedent in the Supreme court and the Sixth Circuit emphasize that the prosecution and punishment for these crimes must be undertaken by the States, however, and that the federal government exceeds its jurisdiction when it steps in this manner into the arena of local non-economic violent crime." *United States v. Garcia,* 143 F Supp 2d 791, 817 (ED Mich. 2000)(Edmunds, N.).  This lack of evidence is reason to conclude that the Government has failed to present sufficient evidence to permit these counts to be submitted to the jury.

## II.  STATEMENT OF FACTS

**A.  The Indictment**

The Government filed a Fourth Superseding Indictment on December 15, 2016. It charges Defendant Porter in Count One with Racketeering Conspiracy in violation of 18 USC §1962(d). Defendants Porter was also charged in Count Thirteen with Attempted Murder in Aid of Racketeering, in violation of 18 USC §1959(a)(5), Count Fourteen: Assault with a Dangerous Weapon in Aid of Racketeering 18 USC 959(a)(3), Count Fifteen: Use and Carry of a Firearm During, and in Relation to a Crime of Violence in violation of 18 USC 924(c), Count Sixteen: Murder in Aid of Racketeering in violation of 18 USC 1959(a)(1), Count Seventeen: Use of a Firearm in Furtherance of a Crime of Violence Causing Death in violation of 18 USC 924(c); 924(j), Count Eighteen: Attempted Murder in Aid of Racketeering in violation of 18 USC 1959(a)(5), Count Nineteen: Attempted Murder in Aid of Racketeering in violation of 18 USC 1959(a)(5), Count Twenty: Attempted Murder in Aid of Racketeering in violation of 18 USC 1959(a)(5), Count Twenty-One Assault with a Dangerous Weapon in Aid of Racketeering in violation of 18 USC 1959(a)(3), Count Twenty-Two Assault with a Dangerous Weapon in Aid of Racketeering in violation of 18 USC 1959(a)(3), Count Twenty-Three Assault with a Dangerous

Weapon in Aid of Racketeering in violation of 18 USC 1959(a)(3), Count Twenty-Four Use and Carry of a Firearm During, and in Related to a Crime of Violence and Count Thirty-Two Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 USC 924(c).

### 1. COUNT ONE: RACKETEERING CONSPIRACY

Count One charges that a conspiracy in violation of 18 USC §1962(d) began in about 2003 and continued until the date of the indictment. It charges that Defendant Porter agreed that "a coconspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the racketeering enterprise." The Indictment sets out a laundry list of alleged drug and murder offenses attributed to various defendants, including defendants not on trial, during a time period between 2003 through 2016.

### 2. MURDER AND ATTEMPTED MURDER IN AID OF RACKETEERING
(Counts Two, Three, Eight, Ten, Thirty-Five, Thirty-Seven, and Thirty- Nine)

Each of these counts charges Defendant Porter with either the offense of murder in aid of racketeering in violation of 18 USC §1959(a)(1) and 18 USC §2 or attempted murder in aid of racketeering in violation of 18 USC §1959(1)(5); 18 USC §2.

These counts allege that the named defendant and others were members and associates of the racketeering enterprise alleged in Count One, the Seven Mile Bloods, "a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce"; that the named racketeering enterprise engaged in racketeering activity; and, that the named defendant murdered or attempted to murder a named victim:

> as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Seven Mile Bloods, and for the purpose of gaining entrance to and maintaining and increasing his position in the Seven Mile Bloods, and for the purpose of gaining entrance to and maintaining and increasing his position in the Seven Mile Bloods, an enterprise engaged in racketeering activity.

### 3. RACKETEERING ENTERPRISE

The racketeering enterprise allegation is the core of these charges. It is set out throughout Count One in the Fourth Superceding Indictment. Count One, Paragraph 1 names the racketeering enterprise the "Seven Mile Bloods" (also described in Count One to have had several other names, apparently changing from time to time). It alleges it was an association-in-fact racketeering enterprise that engaged in criminal acts and that it functioned as a continuing unit for a common purpose. Paragraph 8 describes, in generic terms, general purposes of the racketeering enterprise. (i.e., promoting, maintaining, enriching, protecting, enforcing and retaliating).

The remaining racketeering enterprise allegations are captioned "Means and Methods of the Racketeering enterprise." They allege:

- the "Seven Mile Bloods" derived its name from a geographic area of Detroit, Michigan, specifically the "Red Zone" that it maintained in order to conduct drug and weapons sales;

- they tightly controlled the area using fear of physical harm;

- their primary source of income was drug sales;

- they used common graffiti, tattoos and hand signs;

- they intimidated witnesses;

- they routinely carried guns;

- they provided money to those in custody;

- they produced songs and made CD's;

- they used different names.

### III. ARGUMENT

#### A. LEGAL STANDARD

It is beyond dispute that "[a] defendant bears a heavy burden in a sufficiency of the evidence challenge." *United States v. Davis,* 577 F.3d 660 (6th Cir. 2009). The court must "view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor." *United States v. Gibson*, 675 F2d 825, 829 (6th Cir. 1982). The court then "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *United States v. Curley*, 160 F2d 229, 232-34 (DC Cir. 1947); *Jackson v. Virginia*, 443 US 307, 319 (1979).

A motion for judgment of acquittal must be granted if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *United States v. Fawaz*, 881 F2d 259, 261 (6th Cir. 1989).

#### B. REASONS WHY THIS COURT SHOULD GRANT ACQUITTAL ON RICO CONSPIRACY (COUNT ONE) AND VCAR (COUNTS TWO, THREE, TEN, THIRTY-FIVE, THIRTY-SEVEN, AND THIRTY-NINE).

##### 1. THERE HAS BEEN A FAILURE OF PROOF OF THE RACKETEERING ENTERPRISE AS ALLEGED.

The existence of the racketeering enterprise is a required element of the RICO conspiracy offense charged in Count One.

> RICO makes it "unlawful for a person employed by or associated with any racketeering enterprise engaged in, or the activities of which affect, interstate of foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such racketeering enterprise's affairs through a

5

pattern of racketeering activity or collection of unlawful debt. "18 U.S.C. §1962(c).[1]

An association - in - fact racketeering enterprise, as alleged in the present indictment must be "a continuing unit that functions with a common purpose. *United States v. Turkette*, 452 U.S. 576 (1981). According to *Boyle*, it must have at least three structural features: "a purpose, relationships among those associated with the racketeering enterprise, and longevity sufficient to permit these associates to pursue the racketeering enterprises' purpose." 556 U.S. at 946. It is also required that there must be evidence that the alleged structure exists as a separate element. *Id* at 947. In *Boyle*, the Court made clear that its holding in *Turkette,* 452 U.S., at 583, that "the existence of a racketeering enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other,'" is still the law. 556 U.S. 947. More recently, in *Ouwinga v. Benistar 419 Plan Services, Inc.* 694 F.3d 783, 794 (6th Cir. 2012) the Court explained that an association - in- fact racketeering enterprise "require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach. *VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696. 699 (6th Cir. 2000)." The evidence was insufficient to meet these standards.

First, not one person testified in this trial that Defendant Porter was a Seven Mile Blood nor did they testify that he was an associate to the group. There has been no evidence presented that Defendant Porter was even friends or had a personal relationship with any specific person affiliated with the Seven Mile Bloods. Therefore, there is no evidence to suggest that Defendant Porter was conspiring with any individual during the time of this conspiracy.

Second, while the indictment alleges the racketeering enterprise had three purposes, (1)

---

[1] Section 1962(d) makes it a violation to conspire to violate subsections (a),(b), or (c) of the statute

promoting, protecting and enhancing the authority and reputation of the Seven Mile Bloods, (2) maintaining control over territory through acts of intimidation, and (3) enriching its members, the evidence established no activity by the "Seven Mile Bloods." The witnesses consistently described drug sellers as independent contractors. According to witnesses who identified themselves as "Seven Mile Bloods" or "55"," their affiliation was for the purpose of defining a geographic area and protecting each other. None of the Government witnesses testified that the racketeering entity, by whatever name, had any economic function.

Third, Defendant was not seen in any facebook, instagram, rap videos, or picturers that was presented to the jury throughout the trial. The only picture of Defendant Porter shown by the government was at a birthday party where he was seen holding a cup and rapping. Defendant Porter had no relationship with any of the individuals going down to West Virginia to sell pills nor was there any evidence presented that connects him to anyone on this Indictment.

### 2. THERE IS A FAILURE OF PROOF OF A NECESSARY RELATIONSHIP OF ALLEGED ACTS OF RACKETEERING ACTIVITY AND THE RACKETEERING ENTERPRISE.

It is also required that alleged racketeering acts must be related to the illegal purpose of the racketeering enterprise. *United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000); *Sedima S.P.R.L. v. Imrex* 473 U.S. 479, 496 (1985). That is, the defendant must be enabled to commit the racketeering acts solely by virtue of his relationship to the racketeering enterprise or because the offense was related to the activities of the racketeering enterprise. *United States v. Lawson,* 535 F.3d 434 (6th Cir. 2008). Courts have interpreted these requirements to mean that a defendant must use "a racketeering enterprise to engage in a pattern of racketeering activity." *Jay E. Hayden Foundation v. First Neighbor Bank, N.A.* 610 f.3d 382, 388-389 (7th Cir. 2010) (*cited at*: *United States v. Norwood*, 2013 WL 5965328, p. 6).

There is no evidence that Defendant Porter had anything to do with shooting of Raphael Carter on May 1, 2015, on Troester Street, in the City of Detroit. There was no testimony presented by the Government that Defendant Porter was even identified being at or near the location of Troester Street. In fact, Mateilah Scott testified that Billy Arnold along with Choppa and Poppa were seen in a white vehicle right before the shooting.

On the May 8, 2015 shooting on Craft Street and Dutchess, not one witness was able to identify who the shooters were that day. The victims, Mr. Ritchie and Mr. Roberts were only able to see that a person was in a vehicle shooting at them. They did not see any person in the passenger seat as contradicted by the Government's main cooperating witness, Derrick Kennedy, who stated Defendant's girlfriend was in the passenger's seat while Defendant Porter was shooting.

### 3. THERE IS A FAILURE TO PROVE A RICO MOTIVE FOR EACH VCAR COUNT.

A central issue for each of these counts is whether a reasonable fact finder can conclude from the record evidence that the defendants' "general purpose" in shooting the named victim "was to maintain or increase his position in the racketeering enterprise." *United States v. Thai*, 29 F3d 785, 817 (2nd Cir. 1994). Put another way, can the jury reasonably conclude that the defendant committed the violent crime because "he knew it was expected of him by reason of his membership in the racketeering enterprise or that he committed it in furtherance of that membership." *Id.* [2]

In order to establish a direct violation of 18 USC §1959, the Government must prove beyond a reasonable doubt that: (1) there was a RICO racketeering enterprise; (2) the racketeering enterprise was engaged in racketeering activity as defined in RICO; (3) the defendant in question had a position in the racketeering enterprise; (4) the defendant committed the alleged crime of violence;

---

[2] The Indictment alleges that the murders or attempted murders were done "for the purpose of gaining entrance to and maintaining and increasing [the defendant's] position in the SMBs."

and (5) his general purpose in so doing was to maintain or increase his position in the racketeering enterprise. *United States v. Concepcion*, 983 F2d 369 (2nd Cir. 1992).

The statute also requires that the prescribed violent act must have been committed "as an integral aspect of membership" in the racketeering enterprise. S.Rep. N.O. 225, 304, reprinted in 1984 USCCAN at 3483. While commission of a violent act may not have been the defendant's sole or principal motive, the evidence must support an inference that "the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the racketeering enterprise or that he committed it in furtherance of that membership." *Concepcion, supra*, at 381. That is, the violent act must have been committed "as an integral aspect of membership in the racketeering enterprise." *United States v. Thai*, 29 F3d 785, 817 (2nd Cir. 1994).

The purpose element of VICAR does not require defendant to be *solely* motivated by desire to increase status within the organization, but a defendant's purpose must be more than merely incidental. In *United States v. Banks*, 514 F.3d 959, 969-970 (9th Cir. 2008), the Court explained:

> [A]lthough the law does not require that the defendant's gang-related purpose be his primary or sole purpose, it does require that his purpose be more than merely incidental: It must be within his "general" purpose, or, in the alternative, the violence committed must be in some way "integral" to the defendant's membership in the gang.
>
> Although we think the question is a close one, we conclude that the instructions given by the district court here were erroneous because they permitted the jury to convict Banks on the VICAR counts even if it found that his battle with Gilmore was generally motivated by personal animosity and by a desire to regain the respect and affection of his girlfriend, so long as the jury also found some incidental purpose to maintain his position in the gang. By permitting the jury to find only that Banks's desire to maintain or enhance his status in the gang was "one of" or "at least one of" his purposes or "at least in part" due to his membership in the gang, the district court ran the risk that the jury would focus not on Banks's general purpose in committing these crimes and its relationship to his status in the gang, but merely on his status as a gang member. Given that status, the jury could easily infer that he acted "at least in part" to enhance his membership and status within the gang.

9

> We are persuaded that VICAR requires more than this. People often act with mixed motives, so the gang or racketeering enterprise purpose does not have to be the only purpose or the main purpose of the murder or assault. But it does have to be a substantial purpose. Murder while a gang member is not necessarily a murder for the purpose of maintaining or increasing position in a gang, even if it would have the effect of maintaining or increasing position in a gang. ***By limiting the statute's scope to those cases in which the jury finds that one of the defendant's general purposes or dominant purposes was to enhance his status or that the violent act was committed lls an integral aspect'bf gang membership, we ensure that the statute is given its full scope, without allowing it to be used to turn every criminal act by a gang member into a federal crime***. (Emphasis added.)

Stated differently, it is the Government's burden to establish evidence from which reasonable minds can conclude the existence of a racketeering enterprise related motive. *United States v. Jones*, 291 F Supp 2d 78 (D CT, 2003). In *Jones*, the district court granted the defendant's motion for judgment of acquittal. The central issue posed by Jones' Rule 29 motion was whether his "general purpose' in committing a murder 'was to maintain or increase his position in the racketeering enterprise." *Id* at 85.

Jones was the leader of a violent drug distribution gang in a Connecticut public housing complex called P.T. Barnum. He was tried on RICO and VCAR murder counts. According to the district court opinion granting his acquittal after the jury verdict against him, there was overwhelming evidence presented at his trial that he was the leader of an organization characterized by an organizational hierarchy and use of firearms to commit violent acts. There was also evidence presented from cooperating witnesses that "obtaining and maintaining "respect" were essential elements for any drug organization that operated in the marketplace at P.T. Barnum;" *Jones, supra* at 81, and "undisputed evidence that Jones, as leader of his Racketeering enterprise, earned and commanded respect throughout P.T. Barnum. *Id.* The court noted as well that "to gain and maintain respect, Jones and the members of the Racketeering enterprise as well as rival gangs cultivated a reputation for violence," and that Jones and members of the Racketeering enterprise

"committed conspicuous acts of violence to maintain respect and protected their drug-trafficking turf." *Id.* The murder at issue occurred at a social event. Jones shot a man named Lawrence, because Lawrence disrespected Jones' girlfriend. *Jones,* at 84-85.

Based on that record, the court concluded that there was more than sufficient evidence from which to conclude that Jones was guilty of a state law murder offense, but could not conclude that there was evidence from which a reasonable fact finder could find that Jones's general purpose in murdering Lawrence was to maintain or increase his position in the racketeering enterprise. *Id* at 85. The court concluded that "the government has failed to prove that Jones, in responding to Lawrence's personal acts of disrespect,"was "expected to act based on the threat posed to the racketeering enterprise and that failure to do so would have undermined his position within that racketeering enterprise." *Id* at 87.

The court also noted that "there is no evidence to support the government's strained inference that Jones had a generalized need to use violence in response to all acts of disrespect--regardless of whether the disrespect was directed at him personally or was related to the affairs of the Enterprise-- in order to maintain his position in the Enterprise or to further the Enterprise's objectives. ***Without such evidence, this inference is based only on speculation***." *Id* at 88. (Emphasis added.)

The Seven Mile Bloods are not an organization. Defendant Porter was not in the Seven Mile Bloods nor was he an associate. There is no evidence to suggest that Defendant Porter committed any act that would maintain or increase his position with the Seven Mile Bloods because he was not one of them.

### 4. THE GOVERNMENT HAS FAILED TO PROVE THAT THE ALLEGED RACKETEERING ENTERPRISE HAD A SUBSTANTIAL AFFECT ON COMMERCE.

The focus of the RICO statute is on the economic functions of the racketeering enterprise.

*Waucaush v. United States,* 380 F3d 251, 255 (6th Cir 2004).[3] Given the unique concerns raised by noneconomic enterprises, *Waucaush* held that federal prosecutors needed to demonstrate a substantial, rather than a *de minimis*, effect on interstate commerce. *Id* at 255-256. None of the purposes alleged here are economic. Use of intimidation or violence by the alleged racketeering enterprise is no different than in *Waucaush* where the indictment alleged that "to protect their turf, Waucaush and his colleagues murdered, conspired to murder, and during less successful outings, assaulted, with intent to murder, members of two rival gangs that sought to expand their operations in Detroit." *Id* at 253. As Judge Edmunds concluded in dismissing the indictment charging RICO and VCAR offenses by street gang members in *Waucaush*, economics are the lynchpin of Commerce Clause jurisprudence. *United States v. Garcia,* 143 F Supp 2d 791, 812 (ED Mich 2000)(Edmunds, N.). The court in *Garcia* rejected the alleged use of guns manufactured in other states, traveling out of state, and combating gangs encroaching from other states as reasons to apply a *de minimis* test.

The evidence presented at trial in this case was consistent - drugs and guns were carried out by individuals, not a so-called "SMBs" racketeering enterprise. There were certain individuals that traveled outside the metropolitan Detroit area or the "Red Zone" to sell drugs in West Virginia. There was no testimony that Keithon Porter was involved in any drug business with any of the people involved in West Virginia. There was also no testimony that Keithon Porter was involved with any SMB in the distribution of narcotics. There was an allegation in the trial that Defendant Porter was arrested for selling narcotics to an undercover Warren Police Officer, however, the Officer did state that Defendant Porter was working by himself. The function of the racketeering enterprise, if there was one, was to intimidate and to protect boundaries. None of its

---

[3] See D'Angelo, *Turf Wars: Street Gangs and the Outer Limits of RICO's "Affecting Commece" Requirement*, 76 Fordham Law Review, Issue 4, Article 4, p. 2075, 2076 (2008), for a discussion of the history of RICO and the Commerce Clause requirement.

purposes were economic. All of the acts committed in West Virginia were for the benefit of the individual, not for any other purpose and Defendant Porter was definitely not part of it.

## CONCLUSION

Regarding Count One, the RICO conspiracy, the government theory that multiple unrelated incidents occurring over the course of a decade amount to a racketeering enterprise is strained and speculative, but unsupported by the evidence. So too are the individual VICAR counts. The evidence is insufficient to go to the jury on RICO conspiracy and VICAR. Defendants should be granted acquittals on Count One and each of the VICAR counts in which they are charged with a violation of 18 U.S.C. §1959.

Dated: August 18, 2018

                                           s/Steven Scharg
                                           STEVEN SCHARG
                                           Attorney for Defendant
                                           615 Griswold, Suite 1125
                                           Detroit, Michigan 48226
                                           (313) 962-4090
                                           Mi Bar No. P43732
                                           Scharg1924@gmail.com

Dated: August 18, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

s/ Steven Scharg